UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JEFFREY McDOLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:21-cv-904 AMM |
| | ) |
| **OFFICER FIELDING, and** | ) |
| **CITY OF BIRMINGHAM,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This case is before the court on Officer Fielding's and the City of Birmingham's ("the City") motion for summary judgment. Doc. 28; Doc. 31. For the reasons explained below, the motion is **GRANTED**.

### I. BACKGROUND

Under the court's Initial Order, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." Doc. 4 at 19. Plaintiff Jeffery McDole did not controvert the defendants' statement of material facts. Accordingly, for purposes of summary judgment, these are the relevant undisputed facts construed in the light most favorable to Mr. McDole:

1

"On the night of August 1, 2020, Mr. McDole was traveling on Interstate 59 South in Birmingham, Alabama." Doc. 31 ¶ 3. "Mr. McDole had been drinking alcohol before he was driving on Interstate 59 South." *Id*. ¶ 4. "Mr. McDole's vehicle was involved in a two-vehicle accident while driving on Interstate 59 South." *Id*. ¶ 6. "Mr. McDole continued to drive the vehicle down Interstate 59 South from the scene of the accident." *Id*. ¶ 9.

"Officer Lancaster[ was] the first officer on the scene" and "located" Mr. McDole and his vehicle "on the side of the interstate approximately a half mile away from the scene of the initial collision." *Id*. ¶¶ 10–11. "Officer Lancaster requested the City of Birmingham Fire and Rescue Service (BFRS) medics come to the location." *Id*. ¶ 18.

"When asked to describe the vehicle he collided with, Mr. McDole was unable to do so . . . ." *Id*. ¶ 19. "Mr. McDole had difficulty focusing and occasionally slurred his speech, prompting Officer Lancaster to ask if he was drinking." *Id*. ¶ 20. "Mr. McDole confessed to Officer Lancaster that he had been drinking earlier before" operating "the vehicle." *Id*. ¶ 21.

"Officer Lancaster instructed Mr. McDole to . . . come away from [his] car." *Id*. ¶ 23. "Mr. McDole grabbed his neck and complained about his neck[, and] Officer Lancaster told Mr. McDole the medics were on the way." *Id*. ¶¶ 30–31.

"Officer Lancaster also called dispatch again to confirm that the medics were enroute." *Id*. ¶ 32.

When "BFRS medics arriv[ed], Officer Lancaster advised BFRS personnel that Mr. McDole was complaining of neck pain." *Id*. ¶ 35. "Mr. McDole told a medic that his neck was hurting[, and t]he medics began assessing Mr. McDole." *Id*. ¶¶ 37–38. "Mr. McDole was not bleeding and showed no obvious outward injuries." *Id*. ¶ 39.

While the medics performed their medical assessment, Mr. McDole began to behave "aggressive[ly] . . . toward" Officer Lancaster and yelling. *Id*. ¶¶ 42–44. "The paramedic . . . and EMT Basic . . . stepped back." *Id*. ¶ 46. The paramedic "was concerned for his safety because of Mr. McDole's aggressive behavior and because they were on the side of a busy Interstate at night." *Id*. ¶ 47.

"When EMTs enter a scene, they access whether the scene is safe for Fire and Rescue personnel." *Id*. ¶ 48. "Once a patient displays aggression the scene is no longer safe for Fire and Rescue personnel." *Id*. ¶ 49. "At that point, if the police are present, EMTs stop all assessments until the scene is made safe." *Id*. ¶ 50.

Then, "Mr. McDole again admitted that he had two beers." *Id*. ¶ 54. "Officer Lancaster repeatedly asked Mr. McDole to . . . take the Standard Field Sobriety Test (SFST)." *Id*. ¶ 57. "Mr. McDole did not comply with Officer Lancaster's instructions . . . ." *Id*. ¶ 58.

"Officer Fielding then arrived on the scene." *Id.* ¶ 59. "When Officer Fielding arrived, Officer Lancaster was in the middle of making another request to Mr. McDole to perform a field sobriety test." *Id.* ¶ 64. "Mr. McDole did not comply with Officer Lancaster's request . . . ." *Id.* ¶ 65. Another officer and Officer Lancaster arrested Mr. McDole. *Id.* ¶ 66. "Officer Lancaster placed Mr. McDole in the backseat of his patrol vehicle." *Id.* ¶ 69.

"Officer Lancaster told Officer Fielding that Mr. McDole had been uncooperative and refused to take the" SFST. *Id.* ¶ 70. "Officer Lancaster also informed Officer Fielding that he let the medics check Mr. McDole out first." *Id.* ¶ 71. "The medics then left the location." *Id.* ¶ 74.

"Officer Lancaster agreed to" and did "transfer Mr. McDole to Officer Fielding's custody." *Id.* ¶¶ 78–81. "For Officer Fielding's police report, Officer Lancaster informed Officer Fielding that he could just say the medics checked [Mr. McDole] out, that Officer Fielding shouldn't have to go to the hospital[,] and that the Sergeant wanted Mr. McDole written up for everything concerning the DUI accident." *Id.* ¶ 86. "Officer Fielding . . . observed that Mr. McDole was not bleeding, had no abrasions or lacerations[,] and showed no obvious outward injuries." *Id.* ¶ 87.

"Mr. McDole complained about the fit of the handcuffs." *Id.* ¶ 88. "Before Officer Fielding transported Mr. McDole, he asked Officer Lancaster to shine his

4

flashlight on the handcuffs Mr. McDole had on, so Officer Fielding could loosen them (sized-to-fit)." *Id.* ¶ 89. "Officer Fielding wanted to make sure they were not on too tight since Mr. McDole's main complaint to him was the handcuffs." *Id.* ¶ 91.

"While in the back of Officer Fielding's patrol vehicle Mr. McDole asked him to take him to jail so he could make bail." *Id.* ¶ 92. "Officer Fielding then transported Mr. McDole to the City of Birmingham Jail without incident." *Id.* ¶ 93. "Mr. McDole was quiet during the transport to the jail[]" and "did not complain about the handcuffs or his neck." *Id.* ¶¶ 94–95.

"When Officer Fielding and Mr. McDole arrived at the jail, Officer Fielding parked his patrol vehicle at the side entrance to the jail and Mr. McDole began complaining about his neck." *Id.* ¶ 96. "Mr. McDole said the medics had not checked him[,]" and "Officer Fielding told Mr. McDole that he was told that the medics had checked him." *Id.* ¶¶ 97–98. "Officer Fielding assisted Mr. McDole out of his patrol vehicle and walked him into the jail." *Id.* ¶ 99.

"When Officer Fielding attempted to have Mr. McDole perform the [breathalyzer test,] he complained about his neck and informed Officer Fielding he could not do the test due to pain to his neck." *Id.* ¶ 101. "Mr. McDole complained to the jail staff about his neck." *Id.* ¶ 102. "The jail will not admit/book persons who claim injury." *Id.* ¶ 103.

"Since Mr. McDole had previously been seen by the medics and they did not transport him[,] Officer Fielding decided to immediately transport Mr. McDole to the University of Alabama at Birmingham Hospital (UAB)." *Id.* ¶ 107. "When they arrived at UAB the nurse came to assess Mr. McDole at the emergency/trauma entrance to UAB." *Id.* ¶ 109. Officer Fielding and Mr. McDole "s[a]t in the UAB Hospital hallway in total for more than an hour before an MRI was done on Mr. McDole." *Id.* ¶ 112. Mr. McDole testified that he incurred "[a] broken neck" and "[a] blood clot . . . [o]n [his] brain" "because of the two-vehicle accident [he] w[as] . . . involved in" on that night. Doc. 26-2 at 24.

"Mr. McDole was cited for violating Alabama Code § 32-5A-191(a)(2) Driving Under the Influence (Alcohol) and Alabama Code § 32-6-1(a) No Driver's License." Doc. 31 ¶ 116. On May 28, 2021, Mr. McDole filed his two-count complaint in the Circuit Court of Jefferson County, Alabama. *See* Doc. 1-1. On July 2, 2021, the City removed the case to this court. *See* Doc. 1.

Mr. McDole asserts two claims. *See* Doc. 1-1. Count One asserts a claim for deliberate indifference against Officer Fielding under 42 U.S.C. § 1983. *Id.* ¶¶ 30–34. Count Two asserts that the City "ratified [Officer Fielding's] actions through inaction" and asserts a claim "for unskillfulness and unreasonableness of its agents under Alabama Code § 11-47-190." *Id.* ¶¶ 35–38 (emphasis omitted). Officer

Fielding and the City moved for summary judgment. *See* Doc. 28; Doc. 31. Mr. McDole did not file a response.

## II.   STANDARD OF REVIEW

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There can be "no genuine issue as to any material fact" when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (cleaned up). In such a situation, the movant is "entitled to a judgment as a matter of law" and Rule 56 "mandates the entry of summary judgment." *Id.* (cleaned up).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Id.* at 323. If the movant meets this initial burden, then responsibility "devolves upon the non-movant to show the existence of a genuine issue as to the material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). All reasonable doubts about the facts should be resolved in favor of the nonmovant, and all justifiable inferences should be drawn in the nonmovant's favor. *Id.* at 1115.

7

Summary judgment must be granted if the nonmoving party has "failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1294 (11th Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 323). If a party fails to address another party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion[, or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

"[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed . . . ." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004). "[E]ven with an unopposed motion for summary judgment, the moving party still bears the burden of identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrates the absence of a genuine issue of material fact." *Palm Beach Polo, Inc. v. Vill. of Wellington*, No. 21-12054, 2022 WL 17998533, at *3 (11th Cir. Dec. 30, 2022) (cleaned up).

## III. ANALYSIS

### A. Deliberate Indifference Against Officer Fielding (Count 1)

As an initial matter, the court observes that Mr. McDole has asserted that Officer Fielding was deliberately indifferent to his serious medical needs in violation of the Fourth Amendment. *See* Doc. 1-1 ¶¶ 30–34. The Eleventh Circuit has held that deliberate indifference claims brought by arrestees and pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. *E.g.*, *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . . ."). Further, the Eleventh Circuit has explained that "the standards" for deliberate indifference claims "under the Fourteenth Amendment are identical to those under the Eighth" Amendment. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) (cleaned up). Accordingly, the court examines Mr. McDole's deliberate indifference claim under the standards of the Fourteenth and Eighth Amendments.

"Qualified immunity protects government officials performing discretionary functions from civil trials . . . and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022) (cleaned up). "To receive qualified immunity, the official must first prove that he was acting

9

within the scope of his discretionary authority when the allegedly unlawful conduct took place." *Hamlet v. Martin Corr. Inst.*, No. 21-11937, 2022 WL 16827438, at *3 (11th Cir. Nov. 9, 2022). Officer Fielding asserts that he "was acting within the scope of his discretionary authority," Doc. 31 at 21, and Mr. McDole does not contest this assertion.

"Once an official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate (1) that the facts show that the official violated the plaintiff's constitutional rights and (2) that the law clearly established those rights at the time of the alleged misconduct." *Hamlet*, 2022 WL 16827438, at *3 (cleaned up). Federal courts "may undertake these two inquiries in either order." *Barcelona v. Burkes*, No. 21-14285, 2022 WL 15137410, at *2 (11th Cir. Oct. 27, 2022) (cleaned up); *accord Christmas v. Harris Cnty.*, 51 F.4th 1348, 1354 (11th Cir. 2022) ("Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.") (cleaned up).

"[F]ederal and state governments have a constitutional obligation to provide minimally adequate medical care to those" in their custody. *Muhammad v. Jones*, No. 22-10801, 2022 WL 17958940, at *1 (11th Cir. Dec. 27, 2022) (cleaned up). "To show that a [government] official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."

10

*Id*. at *2 (cleaned up). "To meet the first prong, a plaintiff must demonstrate an objectively serious medical need, meaning one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and, in either instance, one that, if left unattended, poses a substantial risk of serious harm." *Id*. (cleaned up).

"To satisfy the second, subjective prong, a plaintiff must prove that the [government] officials acted with deliberate indifference to his serious medical need." *Id*. (cleaned up). "A plaintiff must demonstrate that [government] officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Id*. (cleaned up). "This standard is far more onerous than normal tort-based standards of conduct sounding in negligence and is in fact akin to subjective recklessness as used in the criminal law." *Id*. (cleaned up).

Officer Fielding does not appear to assert that Mr. McDole's "broken neck" and "blood clot . . . on [his] brain," Doc. 26-2 at 24, were not objectively serious medical needs. *See generally* Doc. 31 at 24–25. Officer Fielding asserts that "Mr. McDole cannot make th[e] showing[]" of the subjective prong of a deliberate indifference claim: that Officer Fielding knew that Mr. McDole needed treatment

11

and disregarded that need with conduct that is more than gross negligence. *Id*. at 25–28; *see Muhammad*, 2022 WL 17958940, at *2.

Officer Fielding relies on four undisputed facts to assert that he did not act with deliberate indifference to Mr. McDole's medical needs. *First*, Officer Fielding asserts that Officer Lancaster told him "that the medics had checked [Mr. McDole] out and that . . . [Mr. McDole] shouldn't have to go to the hospital." Doc. 31 at 25; *id*. ¶ 86. *Second*, "Officer Fielding observed that Mr. McDole had no bleeding, no abrasions or lacerations[,] and showed no obvious outward injuries when he was transferred to [Officer Fielding's] custody." *Id*. at 25–26; *id*. ¶ 87. *Third*, "during the transport to the city jail[,] Mr. McDole did not complain about his neck or any injury," and once Mr. McDole did complain about his injury, "Officer Fielding transported Mr. McDole [to UAB] in order to prevent any delay in treatment in case Mr. McDole was injured." *Id*. at 26–27; *id*. ¶¶ 94–95, 107. *Fourth*, Mr. McDole was examined by two groups of medical personnel, the paramedics at the scene and the nurses at UAB, "who are trained to recognize and diagnosis serious medical problems" and neither group "recognize[d Mr. McDole's] serious medical injury needing immediate treatment." *Id*. at 25–27; *id*. ¶¶ 34–39, 86, 107, 109, 113–14. According to Officer Fielding "[i]f the trained medical personnel . . . did not recognize a serious medical injury . . . , then Officer Fielding cannot be held to a

higher standard than the trained medical personnel." *Id*. at 26; *id*. ¶¶ 35–39, 109, 112.

A government official cannot be liable for deliberate indifference "unless the official knows of and disregards an excessive risk to [an individual's] health . . . ; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Lane v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016) (cleaned up). For purposes of summary judgment, it is undisputed that Officer Fielding did not know that Mr. McDole had a serious medical need with respect to his neck until after Mr. McDole arrived at the jail. *See* Doc. 31 ¶¶ 59–95; *see also* Doc. 26-1 at 11, 53–55. Accordingly, Officer Fielding is entitled to qualified immunity as to any claim related to his conduct before Mr. McDole arrived at the jail.

The Eleventh Circuit has held that "even where medical care is ultimately provided, a [government] official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *Ireland*, 53 F.4th at 1293. For purposes of summary judgment, it is undisputed that after Mr. McDole arrived at the jail and complained of neck pain, "Officer Fielding . . . immediately transport[ed] Mr. McDole to the" hospital to obtain treatment. Doc. 31 ¶ 107; *see*

*also* Doc. 26-1 at 56. Thus, Officer Fielding did not "delay[] the treatment of [Mr. McDole's] serious medical needs." *Ireland*, 53 F.4th at 1293. Accordingly, Officer Fielding is entitled to qualified immunity as to the deliberate indifference claim against him, and summary judgment is **GRANTED** as to Count One.

### B. Unreasonableness and Unskillfulness Against the City (Count 2)

The City asserts that "[i]f this court finds [that] Officer Fielding is entitled to qualified immunity for [Mr.] McDole's federal claim, then the City is" also immune from liability for the state-law claim against it. Doc. 31 at 33. Under Alabama law, "if a municipal police officer is immune" for his conduct, "then . . . the city by which he is employed is also immune." *Ex parte City of Tuskegee*, 932 So. 2d 895, 910 (Ala. 2005) (cleaned up). Accordingly, although Mr. McDole has not asserted a state-law claim against Officer Fielding, the City's entitlement to immunity turns on whether Officer Fielding could receive state-agent immunity for his conduct.

Under Alabama law, "law enforcement officers are immune from tort liability for conduct within the scope of their discretionary law enforcement duties." *Hunter v. City of Leeds*, 941 F.3d 1265, 1283 (11th Cir. 2019). Officer Fielding asserts that he "was acting in the scope of his discretionary authority," Doc. 31 at 21, and Mr. McDole does not contest this assertion. Accordingly, state-agent discretionary immunity could apply to Officer Fielding's conduct.

14

But Officer Fielding can lose his entitlement to "immunity if (1) the U.S. Constitution, federal law, the state Constitution, or state laws, rules, or regulations enacted or promulgated for the purpose of regulating the activities of a governmental agency, require otherwise; or (2) [Officer Fielding] act[ed] willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of the law." *Hunter*, 941 F.3d at 1283 (cleaned up). "The Alabama Supreme Court has largely equated qualified immunity with discretionary-function immunity, and so the same facts which establish an entitlement to qualified immunity may also establish that the officers are entitled to discretionary-function immunity." *Id*. at 1284.

As described above, Officer Fielding did not violate Mr. McDole's constitutional right to medical care. Further, there is no evidence before the court that Officer Fielding "act[ed] willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of the law." *Id*. at 1283 (cleaned up). Officer Fielding would be entitled to state-agent immunity for his conduct, and because Officer Fielding would be entitled to state-agent immunity for his conduct, "the [C]ity . . . is also immune." *Ex parte City of Tuskegee*, 932 So. 2d at 910 (cleaned up). Accordingly, summary judgment is **GRANTED** as to the claim against the City.

## IV. CONCLUSION

For the foregoing reason, the motion for summary judgment, Doc. 28; Doc. 31, is **GRANTED**. The court will enter a separate order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 21st day of March, 2023.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE